FILED
US DISTRICT COURT
WESTERN DISTRICT
OF ARKANSAS
Feb 7, 2018
OFFICE OF THE CLERK

UNITED STATE DISTRICT COURT
WESTER DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

KURTIS D. CARLSON                                                                                                PLAINTIFF

Vs.                            CASE NO. __18-5022____TLB_____

WAL-MART ASSOCIATES INC.                                                                                DEFENDANT

## COMPLAINT

Comes now the Plaintiff, by and through his counsel, Lloyd W. "Tre'" Kitchens, of The Brad Hendricks Law Firm, and for his Complaint states:

1. Plaintiff is a citizen of the United States who presently lives and works in Australia.

2. Defendant Wal-Mart Associates, Inc. (Wal-Mart) is a foreign for-profit corporation doing business in the state of Arkansas. Service may be obtained by serving the Corporation Company at 124 West Capital Ave, Suite 1900, Little Rock Arkansas 72201

3. The events complained of herein occurred in part in Bentonville, Benton County, Arkansas. This Court has jurisdiction to hear this matter and is the proper venue.

## FACTS

4. Plaintiff worked for the Defendant from February 2005 until August of 2007 when he left the employment of the Defendant to attend school.

5. During this first tenure with the Defendant, the Plaintiff met or exceeded all legitimate expectations of the Defendant.

6. Defendant rehired the Plaintiff as a salaried Innovation Project Manager at the Defendant's home office on April 12, 2010.

7. Plaintiff became a salaried wine buyer for the Defendant on May 17, 2014.

8. Defendant terminated the Plaintiff for "gross misconduct" on May 25, 2017.

1

9. While employed by the Defendant the Plaintiff had a sexual relationship with another employee of the Defendant Erin McCracken.

10. The following is a timeline of the relationship:

A. January 2016: Mrs. McCracken took the Plaintiff on two work trips to Florida. During those trips Mrs. McCracken repeatedly tried to get the Plaintiff drunk. On the second trip she talked about being able to get Plaintiff promoted and then asked that he not make a big deal for her needing him to "make her feel special";

B. February 2016: During the Year Beginning Meeting, Mrs. McCracken said she would get Plaintiff in front of leadership if he would have sex with her and go on dates with her. This was the first time they had sex and when she threated to tell people he sexually harassed her if he tried to tell anyone;

C. On February 18, 2016, Mrs. McCracken followed Plaintiff and his wife to multiple restaurants. At the last restaurant, she followed Plaintiff to the bathroom and tried to sneak in, but instead waited for him to come out and grabbed Plaintiff's penis while telling him "I want more of that". At a gala, she followed Plaintiff's wife around and texted him, saying she wanted to tell her, "That I was hers";

D. March 2016: Mrs. McCracken planned a trip to North Carolina. She bought drinks for herself and the Plaintiff, took Plaintiff to her room and they had sex. The next week she told Plaintiff she was pregnant and threatened to tell his wife if he tried to tell on her to the Defendant;

E. April 2016: Mrs. McCracken planned a trip to Canada, but had it cancelled because she was mad/offended that Plaintiff asked for a paternity test. After this incident Plaintiff tried to switch teams and end the affair on his own, but on April 17 or 18 she blocked him from

leaving for another job. In Plaintiff's 2016 Walmart Annual Evaluation she provided comments regarding his performance that factored into his overall rating;

   F.  May 2016: Mrs. McCracken planned another overnight trip to Florida and paid for Plaintiff to have his own room so they could spend the night together. Monday, May 16, Plaintiff told Mrs. McCracken the affair and sexual harassment had to stop or he would tell Wal-Mart and her husband. May 18, Plaintiff emailed Mrs. McCracken and told her she needed to stop contacting him about personal things. Mrs. McCracken ignored that request and began leaving notes so Plaintiff and others who witnessed her going to her room "open doored" her. The "open door" lasted a couple of months (May-August), but the Defendant did not use their Global Investigations team, did not ask to look at texts or notes because they deemed them as hearsay and hard to prove that she sent them.

   G.  August 2016: On August 10, Plaintiff's executive leadership and HR said there was not enough credible evidence to deem sexual harassment, but they gave him a third level coaching saying that they had enough evidence to fire him, but this was his warning to stop "causing problems". Plaintiff asked to see this evidence, but agents for the Defendant responded that was not the process. Plaintiff also asked them why they did not want to see his evidence for the sexual harassment and they said that was not their job. August 10, 2016, Plaintiff went into his supervisor's office requesting to move areas or be on a new buying desk. The meeting ended with Plaintiff asking to be removed from a company trip so he could look for other jobs. After that meeting Mrs. McCracken told Plaintiff if he tried that again that she would let them fire him. All through the Fall, up until her maternity leave, Mrs. McCracken left Plaintiff notes about what she wanted to do to him sexually or about how she wanted to steal Plaintiff from his wife. She also continued to grope him in the hall or in meetings where she would rub her legs against his;

H.  November/December 2016: Plaintiff met with a Supervisor in the cafeteria and discussed his August coaching to try and understand more of how he got coached and Mrs. McCracken did not. Plaintiff was told not to worry about it. The supervisor said Plaintiff needed to focus on being a good buyer and things would work themselves out. On December 3, 2016 Plaintiff contacted Mrs. McCracken about a paternity test. On December 7, 2016 the paternity test was done. On December 15, 2016 the paternity test results showed that Mrs. McCracken's child was not the Plaintiff's;

I.  December 2016/January 2017: Mrs. McCracken came in over the weekend or while Plaintiff was not at his desk and left a note that he found the following Monday morning. Mrs. McCracken was on FMLA at the time that this inappropriate note was left at work on Plaintiff's desk;

J.  January 2017: Plaintiff again went into his supervisor's office requesting to move areas or be on a new buying desk. Friday before Mrs. McCracken returned from her leave of absence she called Plaintiff. After her call and with the anxiety of her coming back to work Plaintiff had an anxiety attack and had to take a medical leave of absence. Plaintiff had multiple medical issues that required surgery and medication for the rest of his life. Every week while Plaintiff was on leave Mrs. McCracken texted and called Plaintiff. Mrs. McCracken tried to get Plaintiff to come back from leave early by telling church friends that he was going to get promoted, but because Plaintiff was on medical leave she could not promote him;

K.  April 2017: Plaintiff was told that he needed to return to work because Mrs. McCracken was threatening to post his job. On April 24, Plaintiff returned to work and Mrs. McCracken told Plaintiff that she missed him, she slid her hand up the inside of his pants and groped him, then handed him a note about how she drove past his house multiple times a week.

Later in the week she talked about planning a trip to Miami and when he told her that he could not go she told him that she would promote him if he started playing again. The following week one of the women who helped "open door" Mrs. McCracken was let go from the company and she told Plaintiff that if he did not start making her happy that he would be next;

        L.     May 2017: May 2: Mrs. McCracken came by Plaintiff's desk and told him that his wedding anniversary was silly and that it would not stop her. Due to her role with the company she had access to some of Plaintiff's personal information. May 8: Mrs. McCracken came by Plaintiff's desk after lunch and told him "I should get better at locking the doors to my truck." She smiled and then walked away. May 12: Mrs. McCracken called Plaintiff into her office and showed him a calendar notice about where she would be staying for the weekend: Embassy Suites Room 412 or 422. She invited Plaintiff to come and spend the weekend with her. She then groped Plaintiff and rubbed her foot up along the inside of his leg. May 15: Mrs. McCracken told Plaintiff, "It really hurt me that you didn't come this weekend. I cried myself to sleep every night." May 17: Plaintiff told HR that Mrs. McCracken invited him to join her at a hotel last weekend. They said they would talk to her. May 19: Two handwritten notes were left on Plaintiff's desk from Mrs. McCracken. Plaintiff sent an email to her through the Defendant's work email accounts again asking her to stop leaving hand written notes on his desk. May 26: Plaintiff was let go from Walmart the day before Mrs. McCracken returned from vacation "so that I would not cause problems for other associates."

    11.    Plaintiff filed a timely charge of discrimination with the EEOC. ***See attached* Exhibit #1**, Charge No. 493-2017-01065.

    12.    The EEOC issued a "right to sue" on November 14, 2017. ***See attached* Exhibit #2**, Right to Sue.

## COUNT I
## SEXUAL HARASSMENT / QUID PRO QUO DISCMINATION

13.   Plaintiff incorporates the preceding paragraphs as if set for herein verbatim.

14.   Plaintiff is a male.

15.   Plaintiff was subjected to unwelcome sexual harassment described in detail above.

16.   The harassment was based on the Plaintiff's gender.

17.   The harassment complained of affected a tangible employment action, in that when the Plaintiff refused the harasser's sexual advances, he was not promoted, lost opportunity, and was ultimately terminated.

18.   The harasser was one of the Plaintiff's supervisors.

## COUNT II
## RETALIATION

19.   Plaintiff incorporates the preceding paragraphs as if set for herein verbatim.

20.   Plaintiff engaged in protected conduct in reporting the harassment by Mrs. McCracken.

21.   Plaintiff suffered a materially adverse employment act, in that he was not promoted, and ultimately terminated.

22.   The adverse acts suffered by the Plaintiff were causally linked to the protected conduct."

## COUNT III
## HOSTILE WORK ENVIRONMENT

23.   Plaintiff incorporates the preceding paragraphs as if set forth herein verbatim.

24.   Plaintiff was subjected to a hostile or abusive work environment because of Mrs. McCracken's conduct and Defendant's dismissal of Plaintiff's complaints regarding that conduct.

25. The harassment adversely affected the Plaintiff's psychological well-being and unreasonably interfered with the Plaintiff's work performance.

26. The environment to which Plaintiff was subjected was so pervasive as to change the terms and conditions of the Plaintiff's employment by creating a hostile work environment.

## DAMAGES

27. Plaintiff incorporates the preceding paragraphs as if set forth herein verbatim.

28. As a direct and proximate result of the actions of the Defendant the Plaintiff has suffered damages in an amount in excess of the minimum amount for federal diversity jurisdiction to be determined by a jury for the following elements:

    a. Emotional Distress;

    b. Lost reputation;

    c. Lost promotional opportunities, salary and benefits;

    d. Past and future lost wages and benefits;

    e. Loss of employment; and

    f. Compensatory and punitive damages.

**WHEREFORE**, Plaintiff prays this Court grant the following relief:

    a. Grant Plaintiff a trial by jury;

    b. Order Wal-Mart to make Plaintiff whole by providing appropriate back-pay with prejudgment interest, in amounts to be determined at trial, and provide other affirmative relief necessary to eradicate the effects of its unlawful employment practices;

    c.    Order Wal-Mart to make Plaintiff whole by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, including job search expenses, and other appropriate expenses in amounts to be determined at trial;

    d.    Order Wal-Mart to make Plaintiff whole by providing compensation for past and future non pecuniary losses resulting from the unlawful practices complained of above, including emotional pain, suffering, embarrassment, inconvenience, loss of enjoyment of life, and humiliation, in amounts to be determined at trial;

    e.    Order Wal-Mart to pay punitive damages for their malicious and/or reckless conduct described above, in an amount to be determined at trial;

    f.    Grant such further relief as the Court deems necessary and proper;

    g.    Award Plaintiff attorney's fees and costs in this action.

**Plaintiff requests a jury trial on all claims set forth in his Complaint.**

Respectfully submitted,

**THE BRAD HENDRICKS LAW FIRM**
500 C Pleasant Valley Drive
Little Rock, Arkansas 72227
Telephone: (501) 221-0444
Facsimile: (501) 661-0196

By: _____
LLOYD W. "TRÉ" KITCHENS, ABN 99075

8

## VERIFICATION

I have read the above and foregoing and it is true and correct to the best of my knowledge and belief.

Wherein I set my hand and seal this __7__ day of February, 2018.

_____
KURTIS D. CARLSON

*[signature]* 7/2/18

MALVERN POLICE STATION
288 GLENFERRIE ROAD
MALVERN 3144
PH: (03) 8823 5600

```
J.MASON
CONSTABLE
 41253
```

9